UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22 CR 165 RLW (JMB) |
| | ) | |
| ALLEN ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is Defendant Allen Robinson's Motion to Dismiss the Indictment, and Memorandum in Support. [ECF Nos. 38, 39] The government opposes the motion. [ECF No. 41]

**PROCEDURAL HISTORY AND BACKGROUND**

On March 23, 2022, a Grand Jury in our District charged Robinson with one count of knowingly possessing a firearm knowing that he was subject to an order of protection, in violation of 18 U.S.C. § 922(g)(8). On December 2, 2022, Robinson filed a notice indicating that there were no issues he wished to raise by pretrial motion and his case was set for trial. [ECF Nos. 24, 25] On January 18, 2023, Robinson filed a motion to dismiss which the Honorable Ronnie L. White, United States District Judge, denied without prejudice. [ECF Nos. 30, 31] Thereafter, Robinson filed a motion to reopen pretrial motions. [ECF Nos. 32, 33] Judge White granted that motion

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

and pretrial matters were referred back to the undersigned on January 23, 2023. [ECF No. 34] The undersigned held a status hearing on January 27, 2023, and directed Robinson to file any further motions by January 30, 2023. Robinson filed the instant Motion to Dismiss on January 30, 2023, and the government filed its response on February 10, 2023. The undersigned held oral argument on March 6, 2023.

The undersigned concludes that the pending motion can be resolved on the existing record—no testimony is required. Based on the parties' arguments and written submissions, the undersigned makes the following findings of fact,[2] conclusions of law, and recommendations.

### DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION

**I.      Summary of Charges and Proffered Order of Protection**

Robinson is charged with violating 18 U.S.C. § 922(g)(8), which provides as follows:

**(g)** It shall be unlawful for any person—
   \*\*\*
   **(8)** who is subject to a court order that—
   
   **(A)** was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
   
   **(B)** restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
   
   **(C)(i)** includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
   **(ii)** by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;
   \*\*\*
   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition

---

[2] Any necessary and appropriate factual determinations are included within the following discussion.

2

which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8).

The Indictment against Robinson reads as follows:

> The Grand Jury charges that:
> On or about March 19, 2022, in St. Louis City, within the Eastern District of Missouri,
>
> ALLEN L. ROBINSON,
>
> the Defendant herein, knowingly possessed a firearm, knowing he was subject to a court order that was issued after a hearing of which he received actual notice, and at which he had an opportunity to participate, restraining him from harassing, stalking, or threatening an intimate partner, that by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner, and the firearm previously traveled in interstate or foreign commerce during or prior to being in the Defendant's possession.
> In violation of Title 18, United States Code, Section 922(g)(8).

[ECF No. 1]

Following oral argument, the government proffered a copy of the Order of Protection upon which the Indictment relies. [See ECF No. 45-1, Exhibit Order of Protection] The proffered Order of Protection was issued by a Judge in Jefferson County, Missouri, on December 13, 2021, and reflects an effective date until December 12, 2022.[3] The Respondent is identified as Allen Robinson. Page one of the Order of Protection includes a finding that the Respondent "represents a credible threat to the safety of the Petitioner." Page two of the Order of Protection includes a finding that the Respondent "poses a serious danger to the physical or mental health of Petitioner or of a minor child," and that the Court considered "all relevant evidence." Page two also includes a detailed no contact provision, including a requirement that "Respondent **shall not** use, attempt to use, or threaten to use physical force against Petitioner that would reasonably cause bodily

---

[3] In summarizing the Order of Protection, the undersigned is not finding that the Order of Protection was validly issued or that the Respondent named therein is, in fact, the Defendant named in the instant federal Indictment.

3

injury." (Emphasis in original)  Page three of the Order of Protection, which addresses child custody and support issues, counseling and treatment issues, and concealed carry issues, is crossed out.  Page four of the Order of Protection includes a "FIREARMS" section which reads as follows:

> The court finds that:
> a. as a result of a hearing at which Respondent received notice and had an opportunity to participate; and,
> b. Respondent is a spouse, former spouse, is or was cohabitating, or has a child in common with Petitioner; and,
> c. Respondent is a credible threat to the physical safety, or is explicitly prohibited within this Order from the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury against petitioner; and,
> d. Respondent is restricted from harassing, stalking or threatening Petitioner, the child they have in common or a child of Petitioner's partner, or from engaging in any conduct that would place Petitioner in reasonable fear of bodily injury to him or her self, the child in common, or child of Petitioner's partner.
> **THEREFORE, FEDERAL LAW PROHIBITS RESPONDENT FROM POSSESSING, SHIPPING, TRANSPORTING AND/OR RECEIVING ANY FIREARM FOR THE DURATION OF THIS JUDGMENT [SEE 18 U.S.C. SECTION 922(G)(8)].**

(Emphasis in original)  The Order of Protection indicates that the Respondent failed to appear at the hearing.  Parts of the Sheriff's Return are difficult to read, but it appears that the Order of Protection was not served on the Respondent, apparently because his address was unknown.  [See ECF No. 45-1 at 6]  The Sheriff's Return further states that "[a] copy of the order must be served on each person" and provides instructions.

**II.** *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*

Robinson's motion rests on the Supreme Court's recent decision construing the Second Amendment.  See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

Bruen involved a challenge to a New York gun licensing law that required law abiding citizens to satisfy a "proper cause" standard before they could obtain a license to carry a handgun in public.  The proper cause standard required applicants to show a special need beyond that of the

4

general community. The Supreme Court held that the Second Amendment protected a person's right to carry a handgun for self-defense and, therefore, found New York's proper cause standard unconstitutional. In so doing, the Court rejected the two-step, means-ends analytical framework for addressing Second Amendment challenges that had developed in several circuits following its earlier decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. Chicago, 561 U.S. 742 (2010). See Bruen, 142 S. Ct. at 2125-26.[4] According to the Court,

> [d]espite the popularity of this two-step approach, it is one step too many. Step one … is broadly consistent with Heller …. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outerbounds of the right to keep and bear arms.

Id. at 2127. The majority in Bruen used the following standard, not means-ends scrutiny—for addressing Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30 (citation omitted). "The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." Id. at 2131 (quoting Heller, 554 U.S. at 635 (emphasis in Bruen)).

The Court recognized the difficulty that applying this standard might entail, stating "[t]o be sure, '[h]istorical analysis can be difficult; it sometimes requires resolving threshold questions,

---

[4] After Heller and McDonald, a majority of the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." Bruen, 142 S. Ct. at 2125.

5

and making nuanced judgments about which evidence to consult and how to interpret it.'" Id. at 2130 (quoting McDonald, 561 U.S. at 803-04 (Scalia, J., concurring)). The Court also recognized that some cases would be rather "straightforward" and address "a general societal problem that has persisted since the 18th century," see id. at 2131, while other cases might involve more modern "regulatory challenges" that were not "the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." See id. at 2132. Thus, "[a]lthough its meaning is fixed according to those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." Id. (citing United States v. Jones, 565 U.S. 400, 404-05 (2012)). "Just as the First Amendment protects forms of communications not available at the founding, so too must the Second Amendment be interpreted to protect "modern instruments that facilitate armed self-defense." Id. (citation omitted). Therefore, when considering challenges to "present-day firearms regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." Id. "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relatively similar." Id. (citation omitted). The Court identified two broad metrics for assessing "the features that render regulations relatively similar under the Second Amendment," namely "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132-33. "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Id. at 2133 (cleaned up; emphasis in Bruen). The Court cautioned, however, that analogical reasoning should not be undertaken too narrowly or too broadly, providing that –

> On the one hand, courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that

6

our ancestors would never have accepted." Drummond v. Robinson, 9 F.4th 217, 226 (3d Cir. 2021). On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

Id. at 2133.

After considering potentially relevant historical practices, the Court explained that the Second Amendment is on a par with other fundamental, constitutional rights, restating that "[t]he constitutional right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" Id. at 2156 (quoting McDonald, 561 U.S. at 780). The Court held, therefore, that New York's proper cause requirement is unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." Id.

### III.  Summary of Parties' Arguments

Robinson contends that 18 U.S.C. § 922(g)(8) is unconstitutional under the analysis directed by Bruen. Robinson first argues that his conduct is covered by the plain text of the Second Amendment. Robinson next argues that, because domestic violence matters reflect a problem that existed at the founding, the government must point to founding era restrictions which are "distinctly similar" to the restrictions imposed by § 922(g)(8); in other words, the government is not entitled to rely on merely analogous restrictions from the founding era. Robinson argues that, at the founding, concerns over domestic violence were not subject to governmental concern or intervention, but rather were left to the "townsfolk." (See, e.g., Memorandum in Support, ECF No. 39 at 22)[5] Robinson next argues that, even if the government is permitted to rely on historical

---

[5] According to Robinson, "English, colonial, and early American law permitted some intimate partner violence, at least as long as the violent one was the husband. There were limits on how much violence was acceptable, but the government had no role in enforcing those limits

analogues, § 922(g)(8) is still unconstitutional.

Finally, in his Memorandum in Support Robinson argues that even if § 922(g)(8) is not facially unconstitutional, it is unconstitutional as-applied to him. In this regard, however, he primarily maintains that <u>Bruen</u> did not make any distinction between facial and as-applied challenges, and he contends that <u>Bruen</u> demands the same analysis under either type of challenge.

The government argues that both <u>Heller</u> and <u>Bruen</u> define the right to bear arms under the Second Amendment as belonging to law-abiding citizens only. Therefore, according to the government, "[p]ersons subject to valid domestic violence restraining orders that satisfy Section 922(g)(8) are not law-abiding, responsible citizens who fall within the Second Amendment's protection under <u>Heller</u> and <u>Bruen</u>." (Gov't Resp. in Opposition, ECF No. 41 at 6) According to the government, "because the conduct that leads to a restraining order under Section 922(g)(8) will ordinarily violate the law—and will always show a lack of responsibility—people subject to Section 922(g)(8) are not 'law-abiding, responsible citizens' under <u>Heller</u> and <u>Bruen</u>." (<u>Id.</u> at 7-8) Thus, the government contends that there is no need to address whether there was a distinctly similar or analogous founding era firearm restriction to consider for guidance. Instead, the government believes it prevails because Robinson's conduct is not covered by the Second Amendment.

---

for more than a century after the founding." (Defendant's Memorandum in Support, ECF No. 39 at 24) At oral argument, the undersigned questioned whether other fundamental changes, including constitutional changes, regarding the rights of women and others reflects the type of change or shift that would justify a more nuanced approach and permit reasoning by analogy. After all, <u>Bruen</u> recognizes that some cases might involve more modern "regulatory challenges" that were not "the same as those that preoccupied the Founders," and therefore, "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." <u>Bruen</u>, <u>142 S. Ct. at 2132</u> (citation omitted). Robinson held the line and persisted in his view that even changes of such monumental magnitude as the Nineteenth Amendment did not justify reasoning by analogy.

The government next argues that even if Robinson's conduct falls within the plain text of the Second Amendment, § 922(g)(8) is analogous to historical laws that disarmed dangerous people. The government points to, for example, the surety laws which were also addressed in Bruen. Broadly speaking, such laws imposed restrictions such as firearm restrictions on persons who might be reasonably likely to injure another person or breach the peace.[6]

Both parties have directed the Court's attention to decisions from other federal courts which have addressed the constitutionality of § 922(g)(8) post-Bruen. For example, Robinson notified the Court that, in United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023), the Fifth Circuit held that § 922(g)(8) was unconstitutional after Bruen. The government supplied a copy of United States v. Jordan, No. CR-22-00339-JD (W.D. Okla. Oct. 25, 2022) (not reported in Westlaw) which held that § 922(g)(8) remains constitutional after Bruen.

### IV.  Discussion and Analysis

#### A.  Does Eighth Circuit Precedent Remain Controlling After *Bruen*?

In 2011, the Eighth Circuit decided United States v. Bena, 664 F.3d 1180 (8th Cir. 2011), which upheld 18 U.S.C. § 922(g)(8) in the face of a Second Amendment challenge. Bena was decided after Heller and McDonald but long before Bruen. Both parties reference Bena. Robinson contends that Bena is not binding on our Court because it allegedly employed the type of means-

---

[6] In Bruen, the Court described the surety statutes as follows:

> In the mid-19th century, many jurisdictions began adopting surety statutes that required certain individuals to post bond before carrying weapons in public…. These laws were not bans on public carry, and they typically only targeted those threatening to do harm.

Bruen, 142 S. Ct. at 2148. The Bruen majority held that these surety laws did not provide a historical basis for New York's proper cause licensing scheme. See id.

9

ends scrutiny rejected in Bruen. (See Robinson Memorandum in Support, ECF No. 39 at 4 n.3)[7] Robinson further argues that no circuit's Second Amendment precedent survived Bruen. The government does not go so far as to say that our Court remains bound by Bena. But the government's fundamental argument—that the conduct at issue is not covered by the plain text of the Second Amendment—is consistent with the decision in Bena. The undersigned believes that Bena remains binding on our Court—even after Bruen. Therefore, a thorough discussion of Bena is necessary.

The defendant in Bena argued that § 922(g)(8) was facially unconstitutional, as it violated his right to bear arms under the Second Amendment following the Supreme Court's decisions in Heller and McDonald. In Bena, the Eighth Circuit first noted that, "to succeed on [a] facial challenge, [a defendant] 'must establish that no set of circumstances exists under which § 922(g)(8) would be valid.'" Id. at 1182 (cleaned up) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

The Court next considered Heller and McDonald and "the presumptive constitutionality" of certain regulatory measures such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the commercial sale of arms." Id. at 1182 (quoting Heller, 554 U.S. at 626-27). The Court specifically concluded that "[i]t seems most likely that the Supreme Court viewed the regulatory measures listed in Heller as presumptively lawful because they do not infringe on the Second Amendment right." Id. at 1183 (citation omitted). But the Court clearly did not abandon the historical underpinning requirement

---

[7] Elsewhere in his brief, Robinson acknowledges that the Eighth Circuit was one of the circuits that did not adopt a means-ends test following Heller and McDonald, and instead followed a varying approach. (See id. at 3).

which tends to dominate the Bruen analysis. To the contrary, in Bena the Eighth Circuit recognized that "'it has always been widely understood that the Second Amendment codified a pre-existing right.'" Id. (quoting Heller, 554 U.S. at 592).[8]

The Eighth Circuit next recognized that "Heller characterized the Second Amendment as guaranteeing 'the right of <u>law abiding, responsible</u> citizens to use arms in defense of hearth and home.'" Id. at 1183 (quoting Heller, 554 U.S. at 635) (emphasis in Bena). The Court explained that there is "historical support for a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." Id. Thus, the Eighth Circuit recognized that "the concept of a right to arms was inextricably and multifariously tied to that of the virtuous citizen, such that the right to arms does not preclude laws disarming unvirtuous (i.e. criminals) or those who, like children and the mentally unbalanced, are deemed incapable of virtue." Id. (cleaned up).

Against this backdrop, the Court turned specifically to 18 U.S.C. § 922(g)(8), finding that "[a]t least some applications of § 922(g)(8) … promote the government's interest in public safety <u>consistent with our common law tradition</u>." Id. at 1184 (citation and internal quotations omitted, emphasis supplied). The Court referenced the fact "[t]hat firearms cause injury or death in domestic situations has been established by empirical studies that are catalogued in opinions." Id. (citing cases). Accordingly, per the Eighth Circuit, "[i]nsofar as § 922(g)(8) prohibits possession of firearms by those who are found to represent 'a credible threat to the physical safety of [an]

---

[8] The Eighth Circuit further recognized "[t]hat the Supreme Court contemplated such a historical justification for the presumptively lawful regulations is indicated by the Court's reference to the 'historical tradition' that supported a related limitation on the <u>types</u> of weapons protected by the Second Amendment … and by the Court's assurance that it would 'expound upon <u>the historical justifications</u> for the exceptions' mentioned, including the categories of prohibited persons, if and when those exceptions come before the Court." Bena, 664 F.3d at 1183 (quoting Heller, 554 U.S. at 635, 627) (emphasis in Bena).

11

intimate partner or child,' 18 U.S.C. § 922(g)(8)(i), it is consistent with the common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens." Id.

The Court also considered that § 922(g)(8) involves a status that is civilly imposed, rather than the result of criminal process, but it is nonetheless "focused on a threat presented by a specific category of presumptively dangerous individuals." Id. The Court recognized that the prohibition imposed by § 922(g)(8) lasted only so long as the order of protection remained. Id. Therefore, the Eighth Circuit concluded that "the Second Amendment does not preclude [the] type of regulatory measure" at issue in 18 U.S.C. § 922(g)(8). Id.

The Eighth Circuit was careful, however, to explain that its holding was in the context of a facial challenge to § 922(g)(8).[9] Thus, in dicta, the Court explained that § 922(g)(8)(ii) "may permit restriction even where there has been no judicial finding of dangerousness." Id. at 1184-85. Because the defendant in Bena raised "only a facial challenge, and the state court in his case made a specific finding that he posed a threat to the safety of another[,] [the Court] need not consider whether § 922(g)(8) would be constitutional as applied to a person who is subject to an order that was entered without evidence of dangerousness." Id. at 1185 (citation omitted).

Our court must decide whether it is bound by Bena. If Bena remains good law, then Robinson's facial challenge to § 922(g)(8) fails.

The Eighth Circuit has explained that one panel can only re-examine a prior panel decision "if [the prior panel decision] were repudiated or undermined by later authority, such as a statute,

---

[9] The defendant in Bena also raised an as-applied challenge under Fifth and Sixth Amendments, but not the Second Amendment, arguing that "he was not provided the assistance of counsel or provided a meaningful opportunity to participate in the underlying state proceeding." Id. at 1185 (internal quotations omitted). The Eighth Circuit rejected this argument as "an impermissible collateral attack on the predicate no-contact order." Id.

12

an intervening Supreme Court decision, or en banc decision." Dean v. Searcy, 893 F.3d 504, 511 (8th Cir. 2018) (citation and internal quotations omitted), cert. denied, 139 S. Ct. 1291 (2019).[10] The undersigned concludes that Bena remains good law because it has not been repudiated or undermined by any statute or en banc decision. More importantly, one cannot fairly say that Bruen necessarily or implicitly overruled Bena.

In United States v. Hammond, 2023 WL 2319321 at *2-3 (S.D. Iowa Feb. 15, 2023), the Honorable Stephen H. Locher, United States District Judge, considered the same issue and concluded that Bena remains good law. The defendant in Hammond was charged under "18 U.S.C § 922(g)(9), which criminalizes the possession of firearms by persons convicted of a misdemeanor crime of domestic violence." Id. at 1. The court in Iowa found that, although Bena addressed § 922(g)(8), that difference was "not material." Id. at *2. The court observed that "Bena carefully analyzed the 'pre-existing right to bear arms' as it would have been understood in the Founding era and concluded there was 'a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible.'" Id. (quoting Bena, 664 F.3d at 1183). The court emphasized that Bena did not engage in "the sort of means-ends scrutiny that the Supreme Court later held in Bruen to be improper." Id. The court held that the "text-and-history-based approach" applied in Bena "essentially foreshadowed Bruen" and, therefore, "Bena remains good law and must be followed." Id. at *3.

The undersigned recommends that our Court follow the lead of Hammond and conclude that Bena remains good law and is therefore binding precedent. Robinson's contention that no pre-Bruen caselaw survives sweeps too broad of a path; Bruen does not necessarily dictate that

---

[10] In Rahimi, the Fifth Circuit referred to this as "the rule of orderliness." 61 F.4th at 450. There, the Fifth Circuit panel concluded that Bruen fundamentally changed prior Fifth Circuit analysis, which employed means-ends scrutiny of Second Amendment challenges. Id. at 450-51.

result.  As recounted in the summary of Bena above, there can be little doubt Judge Colloton's analysis hinges largely if not entirely on the historical, founding era understanding of the Second Amendment, as dictated by Heller.  See Bena, 664 F.3d at 1182-83.  While the language used in Bena may differ from that used in Bruen, it is not so far afield as to place the validity of Bena into such serious doubt that our Court is now free to consider the issue anew.  To the contrary, despite some differences in language, both decisions rest squarely on the reasoning of Heller, without reliance on interest balancing or means-ends scrutiny.  Robinson's contention that Bena reflects a "means-ends" decision does not withstand serious scrutiny.  True, Bena referred to public safety, but it did so specifically in the context of considering common law traditions and a consideration of Blackstone's Commentaries.  See 664 F.3d at 1183-84 ("At least some applications of § 922(g)(8) … promote the government's interest in public safety consistent with our common law tradition.") (cleaned up, emphasis supplied).  Therefore, it is not accurate to describe Bena as applying means-ends scrutiny.[11]

Because Bena remains good law, our Court is bound by its holding that § 922(g)(8) is facially constitutional.  Therefore, the undersigned respectfully recommends that our Court deny Robinson's motion to dismiss the Indictment, to the extent it rests on a facial challenge to § 922(g)(8).[12]

---

[11] Bena itself seems to disclaim reliance on means-ends scrutiny.  In support of its holding in Bena, the Eight Circuit included the following citation: "Cf. Reese, 627 F.3d at 802-04 & n.4 (applying intermediate and strict levels of means-end scrutiny and concluding that § 922(n)(8) passes constitutional muster)."  United States v. Reese was a post-Heller Tenth Circuit decision, see 627 F.3d 792 (10th Cir. 2010).  According to The Blue Book, the use of a "Cf." citation indicates that "[t]he authority is different from the main proposition but sufficiently analogous to lend support."  The Blue Book, 21st Ed. at 5.  Thus, it is reasonable, and arguably necessary, to conclude that the Eight Circuit did not endorse or employ means-end scrutiny in Bena.

[12] In Hammond, Judge Locher also considered the parties' dispute whether "the People" covered by the Second Amendment covered all citizens or only law-abiding citizens.  See Hammond, 2023 WL 2319321 at *4-6.  A similar dispute exits between Robinson and the

B.     **As-Applied Versus Facial Challenge**

There is no doubt that Bena was decided on the basis of a facial challenge to 18 U.S.C. § 922(g)(8), and that Salerno imposes a steep hurdle to such challenges. See United States v. Salerno, 481 U.S. 739, 745 (1987). Robinson contends that, after Bruen, the distinction between as-applied and facial challenges no longer exists, at least in the Second Amendment context. (See Robinson Memorandum in Support, ECF No. 39 at 33) And even though he nominally raises an as-applied challenge in his Memorandum in Support, at oral argument, Robinson persisted in his position that there is no distinction to be had between facial and as-applied challenges, after Bruen.

To be sure, the majority opinion in Bruen does not make such a distinction—Bruen does not address Salerno at all. Again, it is useful to consider Judge Locher's opinion in Hammond. In dicta, Judge Locher attempted to resolve the complex question of whether Salerno and the distinction between facial and as-applied challenges remains after Bruen. In Hammond, the court concluded that Bruen did not implicitly repudiate or undermine Salerno. Rather, the court concluded that Bruen should be read in the context of the regulation at issue, which was a near blanket ban on firearm possession, and that there would be no set of circumstances in which such

---

government herein. Judge Locher carefully considered both approaches, noting favorable and unfavorable aspects of each, but he ultimately concluded that "the Court need not decide the issue because Bena is consistent enough with Bruen to conclude that it remains good law regardless of whether its analysis is better understood as applying to the first or second stage of the Bruen test." Id. at *6. Before reaching this conclusion, however, Judge Locher addressed a difficult issue raised by the position of defendants such as Robinson. As Robinson has done herein, Judge Locher noted that American tradition permitted some degree of domestic violence by husbands against wives. See id. at *6 (citing United States v. Jackson, 2022 WL 3582504 at *3 (W.D. Okla. Aug. 19, 2022)). Judge Locher recognized that Courts who apply a broad reading of "the People" covered by the Second Amendment face a dilemma because, even though a domestic abuser may not be a law-abiding citizen, the lack of founding-era domestic violence prohibitions may render modern laws disarming such abusers unconstitutional. Per Judge Locher, taking a more nuanced or limited approach at the first Bruen stage regarding "the People" "helps avoid this dilemma." Id.

15

a ban would be valid. Hammond, 2023 WL 2319321 at *4. The court explained that restrictions such as those contained in "Section 922(g) work[] in the opposite direction." Id. Thus, § 922(g) "starts from the premise that everyone has the right to possess firearms." Id. Therefore, the distinction between facial and as-applied challenges survives Bruen in the context of § 922(g).[13]

Again, even though Robinson nominally raised an as-applied challenge, his arguments in support largely rest on the arguments in his facial challenge to § 922(g)(8). Yet there are some aspects at the end of his Memorandum in Support where he offers facts in support of an as-applied challenge. For example, Robinson asks the Court to consider that he has no prior violent convictions of any kind—he has only a misdemeanor property damage conviction. He further asks the Court to consider that he was not present at the hearing regarding the order of protection, but he acknowledges that the government has alleged that he received notice. Finally, Robinson notes that the order of protection has expired and that he has spent considerable time in pretrial detention.

Robinson's Motion to Dismiss does not specifically identify the Federal Rule of Criminal Procedure upon which it relies. But Rule 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12(b)(3), which identifies categories of motions that must be raised before trial also includes the provision that such motions must be determinable short of a trial on the merits. "A motion is

---

[13] In distinguishing nineteenth century surety laws from New York's licensing scheme, the Bruen majority explained that,

> [w]hile New York['s law] presumes that individuals have no public carry right without a showing of heightened need, the surety statutes presumed that individuals had a right to public carry that could be burdened only if another could make out a specific showing of reasonable cause to fear an injury or breach of the peace.

Bruen, 142 S. Ct. at 2148 (citing Mass. Rev. Stat., ch. 134, § 16 (1836)) (internal quotations omitted). This is precisely the point Judge Locher makes in Hammond.

capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." United States v. Turner, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting United States v. Covington, 395 U.S. 57, 60 (1969)). Pursuant to Fed. R. Crim. P. 12(d), our Court must rule on Robinson's as-applied challenge "before trial unless there is 'good cause to defer a ruling' and deferral will not 'adversely affect a party's right to appeal.'" Id. at 605 (quoting Rule 12(d)).

As noted above, the Indictment in this matter does not expressly state that any Court found Robinson to be dangerous. In Bena, the Eighth Circuit clearly left open at least the possibility that some applications of § 922(g)(8) may be unconstitutional as-applied. Because the defendant therein raised only a facial challenge to § 922(g)(8), the Court declined to "consider whether § 922(g)(8) would be constitutional as applied to a person who is subject to an order [of protection] that was entered without evidence of dangerousness." Bena, 664 F.3d at 1185.

Following oral argument, the government proffered a copy of the Order of Protection at issue in this case. For several reasons, at this stage of the litigation it would be premature for our Court to conclude that the Order of Protection establishes that a judge found Robinson to be dangerous. First, Robinson did not stipulate that the Order of Protection proffered against him is legitimate. Second, there is no evidence currently before the Court to conclude that Robinson was, in fact, given notice of the hearing or that he was aware of the Order of Protection against him at the time he allegedly possessed a firearm. Third, Robinson raises other factual reasons why § 922(g)(8) is unconstitutional as applied to him. The undersigned concludes that issues of fact remain which necessarily preclude a pretrial determination of whether § 922(g)(8) might be unconstitutional as applied to Robinson's specific circumstances. Accordingly, the undersigned recommends that our Court deny Robinson's as-applied challenge without prejudice to raising the

matter again at an appropriate time such as, for example, in a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29.

In summary, the undersigned finds that our Court remains bound by the Eighth Circuit's prior decision in Bena—it was not implicitly overruled by Bruen. As a result, it is respectfully recommended that the Court deny Robinson's motion to dismiss, insofar as it raises a facial challenge to § 922(g)(8). It is further recommended that the Court defer ruling on any as-applied challenge because facts related to the commission of the alleged offense are necessary to resolving that issue.

## **RECOMMENDATIONS**

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Court DENY Robinson's Motion to Dismiss the Indictment [ECF No. 38] to the extent it raises a facial challenge to the constitutionality of the charge.

**IT IS FURTHER RECOMMENDED** that the Court DENY without prejudice Robinson's Motion to Dismiss the Indictment [ECF No. 38] to the extent it raises an as-applied challenge to the constitutionality of the charge.

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek review of the Recommendation herein before a United States District Judge. The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990). See also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

This matter will be set for trial by further order of the court, before the Honorable Ronnie L. White, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2023.